```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    No. 08-20075-DV |
| | ) |
| GEORGE CONLEY, | ) |
| | ) |
|     Defendant. | ) |

_____

               REPORT AND RECOMMENDATION ON MOTION
                FOR HEARING TO DETERMINE COMPETENCY
_____

Before the court is the October 16, 2008 motion of the defendant, George Conley, pursuant to 18 U.S.C. § 4241 to determine the defendant's mental capacity to stand trial and assist counsel in his defense. The motion was referred to the United States Magistrate Judge to conduct a competency hearing as required by 18 U.S.C. §4241(a) and make a report and recommendation.

Pursuant to the reference, a competency hearing was held on January 21, 2009 and February 12, 2009. Present were the defendant; his attorney, Randolph W. Alden with the Federal Public Defender's Office; and Joseph C. Murphy, Jr., Assistant U.S. Attorney. At the hearing, the government called Dr. Tanya Cunic, Psy. D., a forensic psychologist with the Federal Bureau of Prisons at the Federal Correctional Institution ("FCI"), Butner, North Carolina, as a witness. The defense called Dr. John Hutson, Ph.D., a clinical psychologist in Memphis, Tennessee, as a witness. For the reasons that follow, it is recommended that the defendant be

deemed incompetent to stand trial, or, in the alternative, referred for further testing and treatment.

PROPOSED FINDINGS OF FACT

On February 20, 2008, the grand jury returned a multi-count indictment (36 counts) against Conley charging him with one count of dealing in firearms without a license in violation of 18 U.S.C. §922(a)(1)(A); ten counts of selling firearms to convicted felons in violation of 18 U.S.C. §922(d)(1) and §924(a)(2); ten counts of being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1); six counts of possessing firearms which were not registered to him in violation of 26 U.S.C. §5861(d) and §5871; six counts of transferring firearms not registered to him in violation of 26 U.S.C. §5861(e) and §5871; and three counts of possession with intent to distribute dihydrocodeinenone in violation of 21 U.S.C. §812. On March 12, 2008, Conley filed a motion for a competency evaluation. The court granted the motion and ordered Conley examined by psychologists and psychiatrists at a Bureau of Prison facility. Conley was transferred to FCI Butner, North Carolina, where he remained from April 14, 2008 to June 6, 2008.

In accordance with the order, Tonya L. Cunic, Psy. D., conducted a mental evaluation of Conley from April 14 through May 28, 2008. During the evaluation, Dr. Cunic conducted four different psychologist tests: (1) the Georgia Court Competency Test - 1992 Revision; (2) the Wechsler Memory Scale - Third Edition

(WMS-III); (3) the Wechsler Abbreviated Scale of Intelligence (WASI); and (4) the Test of Memory Malingering (TOMM). In addition, she reviewed the following documents: the court's order for the evaluation and the letter granting the evaluation extension request. She also spoke with Conley's attorney, Alden. At the conclusion of the examination, Dr. Cunic issued a written psychiatric evaluation, which concluded that Conley suffers from a mental disease or defect, specifically Cognitive Disorder, Not Otherwise Specified, but that he is still competent to proceed to the extent he is able to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Her prognosis was:

> At the present time, Mr. Conley appears competent to proceed. His cognitive deficits will likely be permanent, although there is room for gradual improvement if he were to apply himself in cognitive rehabilitation. It would require a great deal of motivation and work from him. Additionally, his future cognitive status may be impacted by his future medical status. Both his cognitive state and medical status will need to be assessed on a continued basis both during and after his legal proceedings.

(Ex. 1, Cunic Report 8.)

According to Dr. Cunic's report, Conley was born on September 14, 1934, in Benton County, Tennessee. At the time of the examination, Conley was 73 years old. Conley served in the United States Air Force from 1953 to 1957. After receiving an honorable discharge from the Air Force, Conley worked for General Motors and Ford briefly, then for Reynolds Aluminum for approximately 32

3

years. After retiring from Reynolds, he drove a truck briefly. He was in the flea market business when he was arrested. He has one prior conviction for drugs, for which he served several years in prison.

Conley's medical history indicates that he was previously diagnosed with prostate cancer, his protate was surgically removed, but the cancer returned, and he is being treated with injections. Conley also suffers from Type II diabetes and hypertension. He is prescribed the following medications: HCTZ (antihypertensive); lisinopril (antihypertensive): and Metformin (anti-diabetic). He claims his short-term memory is failing. Dr. Cunic was of the opinion that his medical issues may impact his current level of cognitive functioning and that his age-related decline was a confounding factor.

The Wechsler Abbreviated Scale of Intelligence (WASI) revealed Conley's overall intellectual functioning to be in the Borderline range, with a Full Scale I.Q. of 77 which places him in the 6th percentile rank. His Verbal I.Q. was 72, and his Performance I.Q. was 88. Based on his higher score on the Performance I.Q., Dr. Cunic concluded that Conley "may perform better on tasks which are not word or language-based."

On the Wechsler Memory Scale - Third Edition (WMS-III), Conley's overall general memory index (abilities that are critical to effective memory in day-to-day tasks) percentile rank was 3.

4

All of his subscales fell within the Borderline Range, with the exception of the Visual Immediate and Immediate Memory Index scores, which fell in the Extremely Low Range. Dr. Cunic was of the opinion that the scores were reflective of Conley's concerns that he has difficulty recalling newly presented information. In Dr. Cunic's opinion, "Conley does have some legitimate neurocognitive difficulties, specifically short-term memory concerns, which will need to be monitored, given that it is likely that these cognitive areas may continue to decline," but "not to the extreme extent that is communicated by the term 'dementia.'" Dr. Cunic candidly admitted that it was difficult for her "to know the rate or extent of [Conley's] decline in his memory functioning given that there is no collateral data supplying information regarding his premorbid functioning."

Conley's performance on The Test of Memory Malingering (TOMM) indicated that "was not feigning memory impairment."

Dr. Cunic also administered the Georgia Court Competency Test. Dr. Cunic's report indicated that Conley correctly identified the locations of the judicial officers and adequately identified the roles of the judge, jury, prosecutor, and defense attorney. He also understood the basic concept of a plea bargain. Although he was not able to recall specific details about his offense conduct, Dr. Cunic noted that he was able to recall general details about his offense.

5

Dr. Cunic testified at that hearing that she talked to Conley generally about the court proceedings and asked him specifically about a jury. He thought he did not need one because he believed the attorneys could work it out. He described the role of the prosecutor as trying to put him in jail as long as possible. As regarding the charges, according to Dr. Cunic's testimony, Conley though he was charged with guns and pills - Class 3 Lortabs.

Dr. Cunic admitted that Conley was disoriented when he first arrived at FCI Butnerbut once his medications were stabilized, he improved. She also stated that he was distracted by extraneous noise and could not pay attention. She acknowledged that health issues and medication can cause or contribute to memory problems.

Conley further testified that because she had no baseline, she could not determine if Conley's memory problems represented a decline or whether he had always had the problems. She believed that he could retain "chunks" of information if it was presented to him in more than one form. She further explained that he had problems retaining auditory information, but if it was presented in written form, he may be able to retain the information. She suggested procedures to deal with Conley's mental deficits during court proceedings, such as: (1) Having his attorney meet with him immediately prior to and after each hearing; (2) Having someone such as a legal assistant sit with him and provide him written notes throughout the day summarizing the testimony of witnesses;

6

(3) Providing written summaries of the testimony each day; and (4) Reviewing the testimony with him daily. In essence, it was her opinion that his defense attorney would have to constantly reinforce what Conley heard with visual stimulation. Dr. Cunic felt that Conley's memory problems were mainly with receiving and retrieving information, not with processing information. Dr. Cunic acknowledged that these were just suggestions; she could not guarantee that they would work. She was unable to state the extent of Conley's problems without further in-depth testing. Dr. Cunic did not testify to the actual amount of time she spent with Conley.

Conley was also evaluated by Dr. John Hutson, Ph.D., Clinical Psychologist, on August 6, 2008. In connection with the examination of Conley, Dr. Hutson examined Conley's medical records, information regarding the charges, and Dr. Cunic's medical evaluation from FCI Butner by Dr. Cunic. In a written letter report to Alden dated August 11, 2008, Dr. Hutson disagreed with Dr. Cunic's recommendation on the issue of competency. A copy of Dr. Hutson's report was made an exhibit to the hearing. (Ex. 1.)

Dr. Hutson testified at the hearing that he did not perform any additional testing but relied on Dr. Cunic's test results. On cross examination, Dr. Hutson stated that he had spent approximately one and one-half hours with Conley.

During his examination of Conley, Dr. Hutson observed that Conley's long-term memory was relatively intact but that his short-

7

term memory was quite poor. At the hearing, Dr. Hutson was more explicit in describing Conley's short-term memory as virtually non-existent. Conley did not know the date, and, more significantly, Conley did know who his attorney was. He claimed that no attorney had visited him while he was detained at Mason. Conley also told Dr. Hutson that three doctors saw him at Butner, all male. Regarding the present charges, Conley advised Dr. Hutson that he was charged with selling hydrocodeine and a gun. He believed the gun was a pistol. Knowing that the charges had been explained to Conley in court, Dr. Hutson expected Conley to have a better understanding of the charges. It was Dr. Hutson's opinion that Conley did not understand the charges against him, would never understand the charges against him, and, unless he understood the charges against him, he would never understand his punishment.

Based on Conley's military and employment history, Dr Hutson was under the impression that Conley's intellectual capacity had been average or slightly above average most his adult life.

Dr. Hutson concluded that Conley showed evidence of dementia and significant short-term memory problems. He testified that Conley had "very severe memory impairments," and that Conley's condition would continue to deteriorate. It was his opinion that Conley's lack of short-term memory and inability to recall what happens would affect his ability to rationally confer with his attorney during trial. Dr. Hutson testified that there other

8

tests—neuropsychological tests and scans—which could be performed to determine the extent of Conley's dementia. He also opined that Conley had a hearing impairment.

During the hearing, the court had the opportunity to observe Conley's demeanor. On both days of the hearing, Conley said nothing to his attorney or to anyone else. He was not engaged in the hearing. Most of the time, he had his head down. Occasionally, he would look around the courtroom. It was impossible to determine if he heard anything, if he was awake or asleep, or if he was able to understand the proceedings.

At the continuation of the hearing, Conley's attorney introduced the affidavit of Stephen B. Sandman, the Federal Public Defender for the Western District of Tennessee. (Ex. 2.) Attached to his affidavit were time records of Randy Alden on Conley's case. The time records indicate that Alden met with Conley at Mason on eight different occasions between March 3, 2008 and December 2, 2008 and reflected time spent as seven hours. Six of the nine visits preceded Dr. Hutson's examination of Conley.

PROPOSED CONCLUSIONS OF LAW

A defendant in a federal criminal proceeding may not be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. A defendant must be competent to stand trial in order to be afforded due process of law. "[T]he criminal trial of an incompetent defendant violates due process."

*Medina v. California*, 505 U.S. 437, 453 (1992) (citations omitted).

Title 18 U.S.C. §4241(a) provides that:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney or the government may file a motion for hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. §4241(a).

The test of a defendant's mental competency to stand trial was set forth by the Supreme Court in *United States v. Dusky*, 362 U.S. 402 (1960): "The test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Id*. at 402. "Evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence are all relevant . . . ." *Drops v. Missouri*, 420 U.S. 162, 180 (1975). The government has the burden of proving the defendant is competent to stand trial by a preponderance of the evidence. *United States v. League*, 956 F.2d 1427, 1431 n. 10 (7th Cir. 1992).

Based on the testimony and evidence produced at the hearing, the court is unable to conclude as a matter of law that the

10

government has carried its burden of proving that Conley is competent to stand trial.  Much of the evidence is uncontroverted.  Both Dr. Cunic and Dr. Hutson found that Conley suffers from a mental disease or defect, specifically short-term memory deficit.  Dr. Cunic was of the opinion that Conley's level of impairment did not rise to the level of dementia, however, while Dr. Hutson was of the opinion that Conley suffers from dementia.  Both experts were unable to determine the rate or extent of Conley's memory decline because neither had information regarding Conley's premorbid functioning.  As a basis for his diagnosis of dementia, Dr. Hutson, however, assumed a prior average functioning level based upon Conley's previous work history.  Both Dr. Cunic and Dr. Hutson agreed that Conley's cognitive deficits are permanent.  Although Dr. Cunic opined that Conley's condition might gradually improve with cognitive rehabilitation, there was no evidence that Conley is undergoing any such rehabilitation.  Dr. Hutson was of the opinion that Conley's cognitive deficits will continue to decline.  Both Dr. Hutson and Dr. Cunic agreed that Conley had a communicative problem in that he suffered from mild hearing loss to some degree.  Further, both Dr. Hutson and Dr. Cunic agreed that Conley's medical conditions, i.e., diabetes, cancer, and hypertension, his medications, and his advanced age could affect his cognitive abilities, and that his memory fluctuates depending on his medical status.  Additionally, both agreed that Conley had borderline or

11

below average intellectual functioning, and both acknowledged that he was not feigning his disorder. Both agreed that there are additional and more extensive neuropsychological tests that could be done to determine the degree of impairment.

Conley's courtroom demeanor during the hearing did not support a finding of competency. He was not engaged in the proceedings and his conduct failed to demonstrate that he understood the proceedings. His failure to communicate with counsel whatsoever during the hearing was indicative of his inability to meaningfully assist counsel in his defense at trial.

The measures proposed by Dr. Cunic to aid Conley with his memory deficits at trial are merely suggestions with no guarantee of success. They would be very cumbersome to administer. Given that a trial is primarily "verbal," and Conley's primary deficits are with verbal communications, Conley would not be able to adequately assist his counsel in his defense. If Conley is unable to understand the charges and recall testimony from one day to the next, he would not be able to make a rational decision about entering a guilty plea.

## RECOMMENDATION

Based on the foregoing, it is recommended that Conley be declared incompetent to stand trial, or, in the alternative, he be sent to another facility for additional testing to determine the cause and extent of his cognitive disorder.

Respectfully submitted this 9th day of March, 2009.

                                        <u>s/ Diane K. Vescovo</u>
                                        DIANE K. VESCOVO
                                        UNITED STATES MAGISTRATE JUDGE